Louis M. Solomon (LS-7906)
Margaret A. Dale (MD-5117)
Proskauer Rose LLP
1585 Broadway
New York, New York 10036
*Attorneys for Defendant PepsiCo., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- x

MAXWAY INTERNATIONAL CO., INC.   :
                                 :      **07-CV-3634 (LMM)**
               Plaintiff,        :
                                 :
       -against-                 :      **ANSWER AND COUNTERCLAIMS**
                                 :      **OF DEFENDANT PEPSICO, INC.**
                                 :
PEPSICO, INC.,                   :
                                 :
               Defendant.        :

-----------------------------------------------------x

     Defendant PepsiCo, Inc. ("PepsiCo"), as and for its Answer to the Amended Complaint of plaintiff Maxway International Co., Inc. ("Maxway"), by and through its attorneys Proskauer Rose LLP, alleges upon information and belief, as follows:

<u>NATURE OF THE ACTION</u>

     1.    PepsiCo denies the allegations contained in paragraph 1.

     2.    PepsiCo denies the allegations contained in paragraph 2.

     3.    PepsiCo denies the allegations contained in paragraph 3, and refers the Court to the audit report for its contents.

     4.    PepsiCo denies the allegations contained in paragraph 4.

<u>JURISDICTION AND VENUE</u>

     5.    PepsiCo states that the allegations contained in paragraph 5 constitute legal conclusions for which no response is required.

     6.    PepsiCo states that the allegations contained in paragraph 6 constitute legal conclusions for which no response is required.

7.    PepsiCo states that the allegations contained in paragraph 7 constitute legal conclusions for which no response is required.

### THE PARTIES AND RELATED ENTITIES

8.    PepsiCo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8.

9.    PepsiCo admits the allegations contained in paragraph 9.

10.    PepsiCo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10.

11.    PepsiCo denies the allegations contained in paragraph 11, except admits that Bradford was and is a representative of PepsiCo's for specific purposes in specific countries.

12.    PepsiCo denies the allegations contained in paragraph 12.

13.    PepsiCo denies the allegations contained in paragraph 13.

### ALLEGATIONS COMMON TO ALL CLAIMS

14.    PepsiCo denies the allegations contained in paragraph 14, and refers the Court to the First License Agreement for its contents.

15.    PepsiCo denies the allegations contained in paragraph 15, and refers the Court to the First License Agreement for its contents.

16.    PepsiCo denies the allegations contained in paragraph 16, and refers the Court to the First License Agreement for its contents.

17.    PepsiCo denies the allegations contained in paragraph 17, and refers the Court to the First License Agreement for its contents.

18.    PepsiCo denies the allegations contained in paragraph 18, and refers the Court to the First License Agreement for its contents.

19.    PepsiCo denies the allegations contained in paragraph 19, and refers the Court to the First License Agreement for its contents.

20.    PepsiCo denies the allegations contained in paragraph 20.

- 2 -

21.    PepsiCo denies the allegations contained in paragraph 21, and refers the Court to the First License Agreement for its contents.

22.    PepsiCo denies the allegations contained in paragraph 22.

23.    PepsiCo denies the allegations contained in paragraph 23.

24.    PepsiCo denies the allegations contained in paragraph 24, and refers the Court to the Second License Agreement for its contents.

25.    PepsiCo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

26.    PepsiCo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26, except denies that Plaintiff submitted proposed licensed products and marketing material to PepsiCo and/or its designated representatives for approval as required by the agreement.

27.    PepsiCo denies the allegations contained in paragraph 27.

28.    PepsiCo denies the allegations contained in paragraph 28, and refers the Court to the First and Second License Agreements for their contents.

29.    PepsiCo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29.

30.    PepsiCo denies the allegations contained in paragraph 30.

31.    PepsiCo denies the allegations contained in paragraph 31.

32.    PepsiCo denies the allegations contained in paragraph 32.

33.    PepsiCo denies the allegations contained in paragraph 33, except admits that PepsiCo engaged an accountant to conduct an audit of Plaintiff's books and records.

34.    PepsiCo denies the allegations contained in paragraph 34, except admits that PepsiCo submitted an audit report to Plaintiff which concluded that Plaintiff had underreported royalties to PepsiCo in the amount of at least $2,371,141.

35.    PepsiCo denies the allegations contained in paragraph 35.

36.    PepsiCo denies the allegations contained in paragraph 36.

- 3 -

37.    PepsiCo denies the allegations contained in paragraph 37, except admits that PepsiCo submitted an audit report to Plaintiff, and refers the Court to the audit report for its contents.

38.    PepsiCo denies the allegations contained in paragraph 38, and refers the Court to the Second License Agreement for its contents.

39.    PepsiCo denies the allegations contained in paragraph 39, except admits that PepsiCo sent Maxway a letter dated November 27, 2006, and refers the Court to the November 27, 2006 letter for its contents.

40.    PepsiCo denies the allegations contained in paragraph 40, except admits that PepsiCo sent Maxway a letter dated December 13, 2006, and refers the Court to the December 13, 2006 letter for its contents.

41.    PepsiCo denies the allegations contained in paragraph 41, except admits that representatives of PepsiCo and Plaintiff attended a meeting held on January 8, 2007.

42.    PepsiCo denies the allegations contained in paragraph 42, except admits that PepsiCo send Maxway a letter dated February 14, 2007, and refers the Court to the February 14, 2007 letter for its contents.

43.    PepsiCo admits the allegations contained in paragraph 43, and refers the Court to the February 14, 2007 letter for its contents.

44.    PepsiCo admits the allegations contained in paragraph 44, and refers the Court to the February 14, 2007 letter for its contents.

45.    PepsiCo denies the allegations contained in paragraph 45.

46.    PepsiCo denies the allegations contained in paragraph 46, except admits that PepsiCo sent Maxway a letter dated March 2, 2007, and refers the Court to the March 2, 2007 letter for its contents.

47.    PepsiCo admits the allegations contained in paragraph 47, but avers that the payment was not made on time.

- 4 -

48.      PepsiCo denies the allegations contained in paragraph 48, except admits that PepsiCo sent Maxway a letter dated March 12, 2007, and refers the Court to the March 12, 2007 letter for its contents.

49.      PepsiCo denies the allegations contained in paragraph 49, and refers the Court to the March 15, 2007 letter for its contents.

50.      PepsiCo denies the allegations contained in paragraph 50.

51.      PepsiCo denies the allegations contained in paragraph 51.

<u>FIRST CLAIM</u>

(Declaratory Judgment)

52.      PepsiCo repeats and realleges its answers to paragraphs 1 through 51 of the Amended Complaint as if fully set forth herein.

53.      PepsiCo denies the allegations contained in paragraph 53.

54.      PepsiCo denies the allegations contained in paragraph 54.

55.      PepsiCo denies the allegations contained in paragraph 55.

<u>SECOND CLAIM</u>

(Breach of the Covenant of Good Faith and Fair Dealing)

56.      PepsiCo repeats and realleges its answers to paragraphs 1 through 55 of the Amended Complaint as if fully set forth herein.

57.      PepsiCo denies the allegations contained in paragraph 57.

58.      PepsiCo denies the allegations contained in paragraph 58.

59.      PepsiCo denies the allegations contained in paragraph 59.

60.      PepsiCo denies the allegations contained in paragraph 60.

<u>THIRD CLAIM</u>

(Tortious Interference with Contractual Relations)

61.      PepsiCo repeats and realleges its answers to paragraphs 1 through 60 above of the Amended Complaint as if fully set forth herein.

62.     PepsiCo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62.

63.     PepsiCo denies the allegations contained in paragraph 63.

64.     PepsiCo denies the allegations contained in paragraph 64.

65.     PepsiCo denies the allegations contained in paragraph 65.

66.     PepsiCo denies the allegations contained in paragraph 66.

67.     PepsiCo denies the allegations contained in paragraph 67.

68.     PepsiCo denies the allegations contained in paragraph 68.

69.     PepsiCo denies the allegations contained in paragraph 69.

70.     PepsiCo denies the allegations contained in paragraph 70.

FOURTH CLAIM

(Breach of Contract)

71.     PepsiCo repeats and realleges its answers to paragraphs 1 through 70 of the Amended Complaint as if fully set forth herein.

72.     PepsiCo denies the allegations contained in paragraph 72, and refers the Court to the Second License Agreement for its contents.

73.     PepsiCo denies the allegations contained in paragraph 73.

74.     PepsiCo denies the allegations contained in paragraph 74.

75.     PepsiCo denies the allegations contained in paragraph 75.

FIRST AFFIRMATIVE DEFENSE

76.     Plaintiff's Amended Complaint must be dismissed for failure to state a cause of action upon which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

77.     Plaintiff's Amended Complaint is barred in whole or part by the doctrine of unclean hands.

- 6 -

### THIRD AFFIRMATIVE DEFENSE

78.     Plaintiff's Amended Complaint is barred in whole or part by the doctrines of waiver, estoppel and/or laches.

### FOURTH AFFIRMATIVE DEFENSE

79.     The Amended Complaint must be dismissed because PepsiCo has not engaged in any unlawful or unfair business practices, and because PepsiCo's conduct was performed in the exercise of an absolute right, proper and/or justified.

### FIFTH AFFIRMATIVE DEFENSE

80.     The Amended Complaint must be dismissed because Plaintiff has failed to allege facts sufficient to allow the recovery of compensatory or punitive damages from PepsiCo.

WHEREFORE, PepsiCo respectfully requests that: (i) Maxway take nothing by virtue of the Amended Complaint and that Judgment be entered in favor of PepsiCo; (ii) PepsiCo be awarded its costs of suit and attorney's fees incurred in this action; and (iii) for such other relief as this Court deems just and proper.

### PEPSICO'S COUNTERCLAIMS AGAINST MAXWAY

Defendant/Counterclaim - Plaintiff PepsiCo, by and through its attorneys, Proskauer Rose LLP, for its counterclaims against Maxway alleges upon information and belief as follows:

81.     This is an action brought by PepsiCo, the owner of certain famous trademarks against Maxway, a former licensee, due to Maxway's egregious and continuing breaches of the licensing agreement between them.

82.     Maxway has withheld millions of dollars in royalties due to PepsiCo under the terms of their agreement.  Maxway obtained these monies by, among other things, overstepping the bounds of its license agreement and granting rights which it did not have to third parties without PepsiCo's approval.

- 7 -

## JURISDICTION AND VENUE

83.    This is an action, in part, for trademark infringement in violation of §§ 32(1)(a) and 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1116(d), and for false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1). This action also arises under New York and common law.

84.    This Court has subject matter jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121 (trademark) and 28 U.S.C. §§ 1331 (federal question) and 1338(a) (trademark). This Court has subject matter jurisdiction over the state law claims pursuant to principles of supplemental jurisdiction.

85.    This Court also has subject matter jurisdiction based on 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and because the amount in controversy exceeds the sum of Seventy Five Thousand ($75,000) Dollars, exclusive of interests and costs.

86.    This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) (claims of unfair competition joined with substantial and related trademark claims) and principles of supplemental jurisdiction.

87.    Venue is proper under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to PepsiCo's counterclaims occurred, or a substantial part of property that is the subject of the action is situated, in this district. In Section 13.7 of the License Agreement, the parties agreed to have disputes arising out of that agreement heard in this district.

### PepsiCo's Distinctive Trademarks

88.    PepsiCo owns certain famous trademarks, including the PEPSI® and PEPSI-COLA® marks, under which it sells and distributes beverage products throughout the world.

89.    PepsiCo also licenses its famous trademarks to other parties for use on various products.

90. The PEPSI® and PEPSI-COLA® marks are strong and arbitrary, and have been since their first use.

91. Because of their tremendous sales history and the exclusive, lengthy and extensive use of the PEPSI® and PEPSI-COLA® marks, PepsiCo has developed substantial goodwill and a reputation for high quality.

92. PepsiCo is the owner, *inter alia*, of the following federal trademark registrations issued by the United States Patent and Trademark Office for the PEPSI marks used in connection with its PEPSI products:

| MARK | REG. NO. | REG. DATE | GOODS |
|------|----------|-----------|-------|
| PEPSI | 824,150 | Feb. 14, 1967 | Soft drinks and syrups and concentrates for the preparation thereof |
| PEPSI-COLA | 824,151 | Feb. 14, 1967 | Soft drinks and syrups and concentrates for the preparation thereof |
| Design mark | 824,153 | Feb. 14, 1967 | Soft drinks |
| Design mark | 1,746,553 | Jan. 12, 1993 | Soft drinks |
| PEPSI and Design | 2,100,417 | Sept. 23, 1997 | Soft drinks |

| MARK | REG. NO. | REG. DATE | GOODS |
|---|---|---|---|
| PEPSI and Design | 2,104,304 | Oct. 7, 1997 | Soft drinks |
| PEPSI and Design | 2,817,604 | Feb. 24, 2004 | Soft drinks, and syrups and concentrates for making the same |

Said registrations, except Registration Nos. 824,153 and 2,817,604, are valid, subsisting, incontestable and constitute conclusive evidence of PepsiCo's exclusive right to use the PEPSI marks for the goods specified in the registrations, pursuant to 15 U.S.C. §§ 1065 and 1115(b). Registration Nos. 824,153 and 2,817,604 are valid, subsisting, and constitute prima facie evidence of PepsiCo's exclusive right to use the marks identified in the registrations for the goods and services covered by these registrations throughout the United States, pursuant to 15 U.S.C. § 1057(b).

93.    PepsiCo owns registrations in the People's Republic of China for PEPSI, PEPSI-COLA and PEPSI logo marks in connection with goods including clothing, bags, shoes, and sporting goods.

**The Licensing Agreements**

94.    On or about January 1, 1994, PepsiCo entered into a license agreement with Maxway (the "First License Agreement"). The First License Agreement granted Maxway the exclusive right to use certain proprietary intellectual property, including the PEPSI® and PEPSI-COLA® marks, trade dress, logos, designs slogans, and copyrights in the PEPSI® and PEPSI-

- 10 -

COLA® brands in conjunction with "Sports Bags and Accessories," "Footwear" and "Sports Apparel" in certain territories through December 31, 1996.

95.     The First Licensing Agreement was renewed through 2001.

96.     On or about January 1, 2001, PepsiCo entered into a second license agreement with Maxway (the "Second License Agreement"). The Second License Agreement granted Maxway the exclusive right to use certain proprietary intellectual property, including the PEPSI® and PEPSI-COLA® marks, trade dress, logos, designs slogans, and copyrights in the PEPSI® and PEPSI-COLA® brands  (the "Pepsi Marks")  in conjunction with "Sports Bags and Accessories," "Footwear" and "Sports Apparel" (the "Licensed Products") throughout China, Hong Kong, Poland, and Taiwan, through December 31, 2010. A copy of the Second License Agreement is attached hereto as Exhibit 1.

97.     By its terms, the Second License Agreement "shall be governed by and construed in accordance with the laws of the State of New York of the United States of America." Ex.1, § 13.7. The Second License Agreement also contained a venue selection clause, stating that "[t]he courts of the State of New York and/or the federal courts situate in New York shall have sole and exclusive jurisdiction over all disputes arising out of this Agreement" unless waived by PepsiCo. *Id.*

98.     Pursuant to Section 4.1 of the Second License Agreement, royalties were to be paid to PepsiCo equal to five percent of all Net Sales "by or on behalf of" Maxway of the Licensed Products.

99.     Pursuant to Sections 6.2 and 12 of the Second License Agreement, royalty payments were to be made to PepsiCo in U.S. dollars, to PepsiCo's offices in Purchase, New York, with notice to Bradford Licensing's offices in Upper Montclair, New Jersey.

100.    Pursuant to Section 1.4 of the Second License Agreement, Maxway had "no right to sub-license the rights granted" by the Second License Agreement.

101.    Pursuant to Section 8.1 of the Second License Agreement, Maxway had the right to use the licensed marks only "in connection with the Licensed Products."

102.    Pursuant to Section 9.1 of the Second License Agreement, Maxway could sub-contract the manufacture of the Licensed Products, but could do so only if the sub-contractor was made aware that it could not sell the Licensed Products to anyone other than Maxway.

103.    Neither the First License Agreement nor the Second License Agreement granted Maxway any retail right of any type.

<u>The Audit</u>

104.    In or about 2005, PepsiCo began to suspect that Maxway had significantly underreported sales and, therefore, underpaid royalties due to PepsiCo pursuant to the Second License Agreement.

105.    PepsiCo notified Maxway of its intention to conduct an audit of Maxway pursuant to Sections 6.3 and 6.4 of the Second License Agreement.

106.    Maxway did not initially consent to the audit requested by PepsiCo as it was required to do under Section 6.4 of the Second License Agreement.  Accordingly, PepsiCo sent a Notice of Termination ("First Termination Notice") to Maxway, pursuant to Section 10.2 of the Second License Agreement.

107.    PepsiCo withdrew the First Notice of Termination only after Maxway agreed to submit to a limited audit, which Maxway was obligated to do in order to avoid termination of the Second License Agreement.

108.    In or around October 2006, Maxway was audited by Ng & Chung on behalf of PepsiCo.  Ng & Chung provided an audit report to PepsiCo which concluded that between 2001 and 2004, Maxway underreported royalties to PepsiCo in the amount of $2,371,141.

109.    The Audit Report also revealed that Maxway had granted the right to manufacture and sell products bearing the Pepsi Marks to a company based in China called Guangzhou Besco Enterprise & Development Co., Ltd ("Besco").  Under the arrangement between Maxway and Besco, Besco manufactured and sold products bearing the Pepsi Marks directly to third parties, and paid Maxway a fixed royalty.  This arrangement between Maxway and Besco amounted to a sub-license, which violated Sections 1.4 and 9.1(ii) of the Second License Agreement.

110.    Besco used unauthorized and unapproved versions of Pepsi Marks, as well as unapproved and unauthorized images of certain celebrities who were under contract with PepsiCo, in conjunction with hundreds of so-called "Pepsi Sports" stores owned and/or franchised by Besco and the advertising and promotion thereof.

111.    Upon information and belief, Besco owns and/or franchises over 300 "Pepsi Sports" stores.

112.    The "Pepsi Sports" stores have a common look from store to store which use the Pepsi Marks.

113.    Besco had no authorization from PepsiCo or its agents to use the Pepsi Marks or celebrity images in any such manner.

114.    Maxway had no authorization from PepsiCo or its agents to allow Besco to use the Pepsi Marks in any such manner.

115.    Maxway never sought authorization from PepsiCo or its agents to allow Besco to use the Pepsi Marks or celebrity images, as it was obligated to do under Sections 7.1 and 8.2 of the Second License Agreement.

<u>Final Notices of Termination</u>

116.    On or about November 27, 2006, PepsiCo sent Maxway written notice of the $2,371,141 in underreported royalties, as well as interest calculated to that date in the amount of $257,548, and demanded immediate payment pursuant to Section 6.3 of the Second License Agreement of a total amount of $2,638,689.

117.    In early December 2006, representatives of Maxway, Bradford Licensing, and PepsiCo met to discuss Maxway's license with PepsiCo.  At that time, Maxway refused to pay PepsiCo the amount in dispute.

118.    On or about December 13, 2006, PepsiCo sent Maxway a second notice of termination letter (the "Second Termination Notice"), granting Maxway 20 days to pay the disputed amounts.

119. Despite PepsiCo's grant of additional time to cure its breach, Maxway continued to disregard the terms of the Second License Agreement, and refused to pay royalties to PepsiCo for the fourth quarter of 2006.

120. On or about February 14, 2007, after a period of investigation, PepsiCo sent Maxway a letter notifying Maxway that Besco was imitating, altering, misusing, and infringing PepsiCo's trademarks, and that Maxway's use of the Pepsi Marks (through Besco) went far beyond the rights granted in the Second License Agreement. PepsiCo notified Maxway that Besco's actions, as Maxway's distributor/sub-licensee, put Maxway in further breach of the Second License Agreement, and demanded that Maxway immediately cure the breaches due to Besco's use of the Pepsi Marks. A copy of the February 14, 2007 letter is attached hereto as Exhibit 2.

121. PepsiCo's February 14, 2007 letter specifically advised Maxway of the following: (i) "[t]he License Agreement . . . grants Maxway rights with respect to certain products, but it does <u>not</u> convey any rights to Maxway to use the likeness or images of celebrities under contract with PepsiCo for a number of reasons, most notably because our agreements with such celebrities are strictly limited in scope and manner of use"; (ii) "[t]he License Agreement does <u>not</u> grant Maxway the right to operate retail stores in the Territory using the Property for the sale of any products, even PEPSI branded products, or to permit others to operate such stores or, worse yet, to solicit and grant franchises to operate such stores"; (iii) "Maxway's activities go far beyond the scope of the license grant . . . What compounds the problem is the fact that virtually all of these uses were done without PepsiCo's approval. We have never received samples for approval of any such commercials, store signage, advertising or promotional uses of our marks nor has our licensing agent, Bradford Licensing." Ex. 2 at 2.

122. On or about March 2, 2007, PepsiCo sent Maxway a third notice of termination letter (the "Third Termination Notice") based on its failure to pay royalties for the fourth quarter of 2006.

- 14 -

123.    On or about March 12, 2007, PepsiCo sent Maxway a final letter, formally terminating the Second License Agreement (the "Termination Letter") due to Maxway's failure to cure all of the breaches enumerated in PepsiCo's letters dated December 13, 2006 and February 14, 2007, as well as it failure to make its fourth quarter royalty payment. A copy of the Termination Letter is attached hereto as Exhibit 3.

124.    Despite this termination, to this day Maxway and Besco continue their unauthorized use of the Pepsi Marks at the so-called "Pepsi Sports" stores.

<u>Maxway's Willful Acts</u>

125.    Maxway has engaged in the misconduct described above intentionally, willfully and maliciously, and in intentional, willful and malicious disregard of PepsiCo's rights and consumers' interests.

126.    Maxway was provided with notice of the illegality of its use of the Pepsi Marks.

127.    Maxway's misconduct and its illegal sublicense of goods bearing the Pepsi Marks to Besco have had a substantial effect on United States commerce.

128.    Maxway, through Besco, knowingly and willfully used the Pepsi Marks so that consumers would confuse the infringing and unlicensed products sold by Besco at unlicensed "Pepsi Sports" stores for genuine goods, licensed and approved by PepsiCo for distribution.

129.    Maxway, through Besco, has knowingly and willfully offered for sale infringing and unlicensed products in unlicensed sales outlets that also use infringing copies of the Pepsi Marks.

130.    Maxway, through Besco, manufactured and sold the infringing and illegal products bearing the infringing Pepsi Marks at unlicensed "Pepsi Sports" stores, despite their knowledge of PepsiCo's prior rights in the Pepsi Marks.

131.    Maxway's adoption and use, through Besco, of the Pepsi Marks was willful as a matter of law, having been adopted with knowledge of PepsiCo's prior rights in and to the world-famous Pepsi Marks, and with intent to trade on and benefit from the goodwill established in the Pepsi Marks.

132.    The unlicensed and illegal products offered by Maxway, through Besco, at the unlicensed stores directly compete with PepsiCo's authorized products.

133.    For all of the foregoing reasons, Maxway's manufacture, distribution, promotion, offer to sell, and/or sale of products, through Besco, bearing the unauthorized Pepsi Marks are likely to result in confusion as to the source and origin of these products and is likely to mislead the public into falsely believing that Maxway and Besco are distributing authorized and licensed PepsiCo products at authorized retail outlets.

134.    Maxway's acts are willful.  By their willful infringement of PepsiCo's registered Pepsi Marks, Maxway, through Besco, is seriously and irreparably damaging PepsiCo and the goodwill that PepsiCo has accumulated.

<u>Irreparable Harm</u>

135.    Maxway's unscrupulous conduct is depriving PepsiCo of the absolute right to control the quality of its trademarks, to which PepsiCo owns exclusive rights in the United States and worldwide.  Maxway thereby is jeopardizing the goodwill associated with the Pepsi Marks.

136.    Maxway's sale of the infringing and unauthorized products, through Besco, deprives PepsiCo of sales and profits it otherwise would receive but for Maxway's unlawful conduct.  Consumers are deceived as to the origin and authorization of the products which Maxway and Besco have attempted to pass off as licensed by PepsiCo.

137.    Maxway's conduct is harming and will continue to harm the public.  Consumers are and will be confused as to the source and origin of Maxway's and Besco's counterfeit products and are, have been, and continue to be, duped into purchasing products that they believe to be PepsiCo products, when in fact they are not.

138.    Maxway's conduct is causing damage to PepsiCo's reputation and its ability to license its Pepsi Marks.

139.    As a result of the foregoing unlawful acts, PepsiCo is suffering irreparable harm for which it has no adequate remedy at law.  Unless Maxway is restrained by the Court from continuing its improper conduct, these injuries will continue to occur.

**First Cause of Action**
**<u>Declaratory Judgment</u>**

140.    Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in paragraphs 1 through 139, as if fully set forth herein.

141.    A justiciable controversy exists between the parties concerning the validity of the termination of the Second License Agreement by Counterclaim-Plaintiff PepsiCo.

142.    PepsiCo lacks an adequate remedy at law and therefore seeks declaratory relief pursuant to 28 U.S.C. Section 2201.

143.    PepsiCo demands judgment against Maxway declaring that the Second License Agreement is terminated due to Maxway's repeated breaches of the Second License Agreement, that PepsiCo's March 12, 2007 termination of the Second License Agreement was effective, and that the Second License Agreement is terminated.

**Second Cause of Action**
**<u>Breach of Contract</u>**

144.    Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in paragraphs 1 through 143, as if fully set forth herein.

145.    PepsiCo fully performed each and every one of its obligations under the Second License Agreement.

146.    Maxway failed to fully pay proper royalties under Sections 4.1, 4.2, 5, 6.1, and 12 of the Second License Agreement, which constitutes a material breach of the Second License Agreement.

147.    As a result of Maxway's breach of the Second License Agreement, PepsiCo has been damaged to an amount to be determined at trial, but not less than $2,638,689, plus interest.

**Third Cause of Action**
**<u>Breach of Contract</u>**

- 17 -

148.   Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in paragraphs 1 through 147, as if fully set forth herein.

149.   Maxway granted the right to Besco to manufacture and sell products bearing the Pepsi Marks without selling those products back to Maxway, which was a material breach of Section 9.1 of the Second License Agreement.

150.   Maxway had no right to sublicense the rights under the Second License Agreement, and therefore its sublicense to Besco was a material breach of Section 1.4 of the Second License Agreement.

151.   As a result of Defendant's breach of the Second License Agreement, Plaintiff has been damaged in an amount to be determined at trial, plus interest.

**Fourth Cause of Action**
**Breach of Contract**

152.   Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in paragraphs 1 through 151, as if fully set forth herein.

153.   Maxway granted Besco the right to use the Pepsi Marks without seeking authorization from PepsiCo, which constituted a material breach of Sections 7.1 and 8.2 of the Second License Agreement.

154.   Maxway knowingly and willfully allowed Besco to use the Pepsi Marks and celebrity images in conjunction with its "Pepsi Sports" stores, despite knowing that Maxway did not have such rights under the Second License Agreement.

155.   As a result of Maxway's breaches of the Second License Agreement, Plaintiff has been damaged in an amount to be determined at trial, plus interest.

**Fifth Cause of Action**
**Breach of Contract**

156.   Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in paragraphs 1 through 155, as if fully set forth herein.

157.    PepsiCo rightfully terminated the Second License Agreement on March 12, 2007 due to Maxway's uncured breaches.

158.    Subsequent to the lawful termination, Maxway has not: (i) provided PepsiCo with a final statement of Licensed Products on hand or in process; (ii) paid all remaining payments due under the Second License Agreement, including the balance of the Guaranteed Minimum Royalties; (iii) delivered to PepsiCo all labels, signs, and other materials bearing the Pepsi Marks; (iv) delivered to PepsiCo a copy of its most recent list of accounts; all in breach of Section 10.4 of the Second License Agreement.

159.    As a result of Maxway's breach of the Second License Agreement, Plaintiff has been damaged in an amount to be determined at trial, plus interest.

**Sixth Cause of Action
Infringement of Registered
Trademarks in Violation of Section 32
of the Lanham Act, 15 U.S.C. § 1114**

160.    Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in paragraphs 1 through 159, as if fully set forth herein.

161.    Maxway was and is infringing PepsiCo's registered trademarks by its unauthorized use of the PepsiCo Marks.

162.    Maxway's conduct is likely to cause confusion, mistake or deceive other distributors and consumers.

163.    Maxway's acts have had a substantial effect on US commerce and injured PepsiCo's reputation and goodwill.

164.    PepsiCo has been and will continue to be irreparably harmed unless Maxway is preliminarily and permanently enjoined from the unlawful conduct.  PepsiCo has no adequate remedy at law.

165.    In light of the foregoing, PepsiCo is entitled to a preliminary and permanent injunction prohibiting Maxway from manufacturing, distributing, and/or infringing the PepsiCo

- 19 -

Marks, and to recover from Maxway all damages that PepsiCo has sustained and will sustain,

and all gains, profits, and advantages obtained by Maxway as a result of its infringing acts

alleged above in an amount not yet known, and the costs of this action pursuant to 15 U.S.C.

§ 1117(a) or, at PepsiCo's option, statutory damages pursuant to 15 U.S.C. § 1117(c).

166.    As this is an exceptional case given Maxway's willful acts, pursuant to 15 U.S.C.

§ 1117(a), PepsiCo is further entitled to three times the amount of the above profits or damages,

whichever is greater, and its attorneys fees or, at PepsiCo's option, statutory damages pursuant to

15 U.S.C. § 1117(c).

**Seventh Cause of Action**
**Unfair Competition and False Designation**
**Of Origin or Sponsorship Under Section 43(a)**
**of the Lanham Act, 15 U.S.C. § 1125(a)**

167.    Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in

paragraphs 1 through 166, as if fully set forth herein.

168.    Maxway's misuse of the PepsiCo Marks and its relationship with Besco have

resulted in the manufacture, distribution and sale of products bearing PepsiCo Marks that did not

originate with the authorized distributor, all of which constitutes false designation of origin in

violation of Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

169.    In addition, it is a false and misleading description and representation of fact

which is likely to cause confusion or mistake, or to deceive the relevant purchasing public as to

the origin or sponsorship of the goods distributed by Maxway's distributor/sub-licensee, Besco.

170.    PepsiCo has been harmed and will continue to be irreparably harmed as a result of

unlawful actions unless Maxway is preliminarily and permanently enjoined from its unlawful

conduct.  PepsiCo has no adequate remedy at law.

171.    In light of the foregoing, PepsiCo is entitled to a preliminary and permanent

injunction prohibiting Maxway from distributing infringing products bearing the PepsiCo Marks,

or using any marks confusingly similar to PepsiCo Marks, and to recover from Maxway all

damages that PepsiCo has sustained and will sustain, and all gains, profits and advantages obtained by Maxway as a result of its infringing acts alleged above in an amount not yet known, and the costs of this action pursuant to 15 U.S.C. § 1117(a) or, at PepsiCo's option, statutory damages pursuant to 15 U.S.C. § 1117(c).

172.    As this is an exceptional case given Maxway's willful acts, pursuant to 15 U.S.C. § 1117(a), PepsiCo is further entitled to three times the amount of the above profits or damages, whichever is greater, and attorneys' fees, or, at PepsiCo's election, it may seek to recover enhanced statutory damages pursuant to 15 U.S.C. § 1117(c).

### Eighth Cause of Action
### Dilution of Plaintiffs' Trademarks Under
### Section 43(c) of the Lanham Act, 15 U.S.C. § 1125

173.    Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in paragraphs 1 through 172, as if fully set forth herein.

174.    The Pepsi Marks are famous within the meaning of 15 U.S.C. § 1125(c).

175.    Maxway's promotion and sale of unlicensed products directly threatens to dilute, and has diluted, the distinctiveness of PepsiCo's Pepsi Marks by blurring the trademarks' ability to act as a distinctive identifier of source or origin and by circumventing PepsiCo's efforts designed to maintain the integrity of the products with which its trademarks are associated.

176.    Maxway's foregoing unlawful acts have irreparably harmed, and will continue to irreparably harm PepsiCo unless this Court preliminarily and permanently enjoins Maxway from engaging in the unlawful conduct.

177.    PepsiCo is entitled to a preliminary and permanent injunction prohibiting Maxway from using the Pepsi Marks or any mark confusingly similar thereto; to recover from Maxway all damages that PepsiCo has sustained and will sustain, and all gains, profits, and advantages that Maxway has obtained as a result of the foregoing infringing activities, in an amount not yet known; the costs of this action, and; attorneys fees pursuant to 15 U.S.C. § 1117(a).

178.     As this is an exceptional case given Maxway's willful acts, pursuant to 15 U.S.C. § 1117(a), PepsiCo is further entitled to three times the amount of the above profits or damages, whichever is greater, and attorneys' fees, or, at PepsiCo's election, it may seek to recover enhanced statutory damages pursuant to 15 U.S.C. § 1117(c).

**Ninth Cause of Action**
**Counterfeiting of Plaintiffs' Trademarks Under**
**Section 43(c) of the Lanham Act, 15 U.S.C. § 114**

179.     Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in paragraphs 1 through 178, as if fully set forth herein.

180.     Maxway and Besco have used spurious counterfeit marks that are identical to and/or substantially indistinguishable from PepsiCo's genuine Pepsi Marks in connection with the sale and advertising of goods and services.

181.     Maxway and Besco have offered these products bearing the counterfeit marks for sale.

182.     Maxway and Besco have applied these counterfeit marks to labels, signs, packages, advertising and other means of advertising.

183.     Maxway and Besco were not authorized to use PepsiCo's Pepsi Marks at the time of manufacture or production of the products.

184.     Maxway and Besco's acts are likely to deceive consumers, and cause confusion and mistake as to the origin of the products bearing the counterfeit marks.

185.     Maxway and Besco's acts were both intentional and wilful.

186.     PepsiCo is entitled to a preliminary and permanent injunction prohibiting Maxway from using the Pepsi Marks or any mark confusingly similar thereto; to recover from Maxway all damages that PepsiCo has sustained and will sustain, and all gains, profits, and advantages that Maxway has obtained as a result of the foregoing infringing activities, in an

amount not yet known; the costs of this action, and; attorneys fees pursuant to 15 U.S.C. §
1117(a).

**Tenth Cause of Action**
**Infringement of Plaintiffs' Trademarks Under**
**New York General Business Law § 360-k**

187.    Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in
paragraphs 1 through 186, as if fully set forth herein.

188.    Maxway and Besco have used, without PepsiCo's consent, reproductions, copies,
counterfeit version, and colorable imitations of the Pepsi Marks in connection with the sale,
distribution, offering for sale, and advertising of products.

189.    Maxway and Besco have used these illegal marks in manners which are likely to
cause confusion and mistake, and which deceive consumers as to the source of origin of such
products.

190.    Maxway and Besco have also reproduced, counterfeited, copied and colorably
imitated the Pepsi Marks and applied them to labels, signs, prints, packages, wrappers,
receptacles and advertisements intended to be used upon or in connection to the sale and
distribution of the counterfeit products.

191.    Maxway and Besco acted with the intent to deceive and to cause confusion and
mistake.

192.    PepsiCo is entitled to a preliminary and permanent injunction prohibiting
Maxway from using the Pepsi Marks or any mark confusingly similar thereto; to recover from
Maxway all damages that PepsiCo has sustained and will sustain, and all gains, profits, and
advantages that Maxway has obtained as a result of the foregoing infringing activities, in an
amount not yet known; the costs of this action, and attorneys fees pursuant to N.Y. Gen. Bus.
Law § 360-m.

**Eleventh Cause of Action**
**Dilution of Plaintiffs' Trademarks Under**
**New York General Business Law § 360-l**

- 23 -

193.    Counterclaim-Plaintiff PepsiCo repeats and realleges the allegations contained in paragraphs 1 through 192, as if fully set forth herein.

194.    Maxway and Besco have used, without PepsiCo's consent, reproductions, copies, counterfeit version, and colorable imitations of the Pepsi Marks in connection with the sale, distribution, offering for sale, and advertising of products.

195.    Maxway's promotion and sale of unlicensed products directly threatens to dilute, and has diluted, the distinctiveness of PepsiCo's Pepsi Marks by blurring the trademarks' ability to act as a distinctive identifier of source or origin and by circumventing PepsiCo's efforts designed to maintain the integrity of the products with which its trademarks are associated.

196.    Maxway's foregoing unlawful acts have irreparably harmed, and will continue to irreparably harm PepsiCo unless this Court preliminarily and permanently enjoins Maxway from engaging in the unlawful conduct.

197.    Maxway's acts have been willful and in disregard of PepsiCo's rights. Maxway knew or should have known that its actions constituted trademark dilution, or it proceeded recklessly in disregard of PepsiCo's rights.

198.    PepsiCo is entitled to a preliminary and permanent injunction prohibiting Maxway from using the Pepsi Marks or any mark confusingly similar thereto; to recover from Maxway all damages that PepsiCo has sustained and will sustain, and all gains, profits, and advantages that Maxway has obtained as a result of the foregoing infringing activities, in an amount not yet known; the costs of this action, and; attorneys fees pursuant to N.Y. Gen. Bus. Law § 360-m.

## **Prayer for Relief**

**WHEREFORE**, Counterclaim-Plaintiff PepsiCo demands judgment against Counterclaim-Defendant Maxway as follows:

1.    Judgment declaring that the Second License Agreement is terminated, that Maxway has breached the Second License Agreement in numerous ways which justify its termination, and that the Second License Agreement is now null and void.

2.    Compensatory damages in the amount of at least $2,638,689, plus interest.

3.    Preliminarily and permanently enjoining Maxway, its affiliates, subsidiaries, parents and their respective officers, agents servants and employees, and all persons in active concert or participation with them and mandating that Maxway forever cease and desist and refrain in the future from, anywhere in the world:

(a)    Directly or indirectly manufacturing, selling, distributing, advertising, promoting, making or offering for sale any counterfeit or infringing product bearing the Pepsi Marks or any colorable imitation thereof;

(b)    Selling or passing off or inducing or enabling others to sell or pass off, any of PepsiCo's products, or products not authorized by PepsiCo, not produced, imported and distributed under the control or supervision of PepsiCo, and approved for sale by PepsiCo;

(c)    Committing any acts calculated to cause purchasers to believe that counterfeit or infringing products bearing the Pepsi Marks are sold under the control and supervision of PepsiCo, when they are not;

(d)    Diluting and infringing the Pepsi Marks and damaging their good will;

- 25 -

(e)     Importing, exporting, shipping, delivering, distributing, returning or otherwise disposing of, in any manner, products or inventory not authorized by PepsiCo to be sold, or offered for sale which bear infringing Pepsi Marks;

(f)     Attempting, causing, or assisting any of the above-described acts, including but not limited to, enabling others to conduct the counterfeiting scheme for them, or by passing along information to others to allow them to manufacture, distribute, sell or offer for sale counterfeit or infringing products bearing the Pepsi Marks; and enjoining Maxway from:

(g)     Destroying or disposing of any documents, records or electronic files relating to the manufacture, distribution, sale, promotion, purchase or acquisition of any product that has been or is intended to incorporate the Pepsi Marks;

4.     Preliminarily and permanently enjoining Maxway and its affiliates, partners, agents, employees, representatives, successors and assigns from forming or causing to be formed any corporation, partnership or other business entity that engages in any of the conduct proscribed by the Paragraphs above.

5.     Directing Maxway to account for and pay to PepsiCo three times their profits resulting from their sale of products bearing the Pepsi Marks not authorized or distributed by PepsiCo, pursuant to Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

6.     Awarding PepsiCo treble damages, or statutory damages in the amount of one million dollars ($1,000,000.00) per trademark, pursuant to section 35(c) of the Lanham Act, 15 U.S.C. 1117(c).

7.     Awarding PepsiCo its reasonable attorneys' fees.

- 26 -

8.    Awarding PepsiCo punitive damages for Maxway's intentional, willful and malicious conduct.

9.    Such other relief as the Court deems just and proper.

Dated:        New York, New York
              August 22, 2007

|  | PROSKAUER ROSE LLP<br><br>By:  /s/ Margaret A. Dale<br>Louis M. Solomon (LS-7906)<br>Margaret A. Dale (MD-5117)<br>1585 Broadway<br>New York, New York 10036<br>(212) 969-3000<br>(212) 969-2900 fax<br><br>*Counsel for Defendant PepsiCo, Inc.* |
|  |  |

- 27 -